# In the United States Court of Federal Claims

No. 11-724T

(Filed: February 27, 2013)

```
********************************   *
                                   *
SEHAT SUTARDJA and WEILI DAI,      *
                                   *
                Plaintiffs,        *
                                   *
v.                                 *
                                   *
THE UNITED STATES,                 *
                                   *
                Defendant.         *
                                   *
********************************   *
```

Tax Refund Suit; Exercise of Stock Options; Applicability of Internal Revenue Code Section 409A Regarding Deferred Compensation Plans; Cross-Motions for Partial Summary Judgment; Material Fact Issues Requiring Trial.

*Glenn A. Smith*, Law Offices of Glenn A. Smith, Palo Alto, California, for Plaintiffs.

*Fredrick C. Crombie*, with whom were *Andrew M. Weiner*, Trial Attorney, *Kathryn Keneally*, Assistant Attorney General, and *David I. Pincus*, Chief, Court of Federal Claims Section, Tax Division, U.S. Department of Justice, Washington, D.C., for Defendant.

### OPINION AND ORDER ON CROSS-MOTIONS FOR PARTIAL SUMMARY JUDGMENT

WHEELER, Judge.

This case arises from a determination by the Internal Revenue Service ("IRS") that Dr. Sehat Sutardja's exercise of stock options granted by his company, Marvell Technology Group Limited, was subject to an additional tax under 26 U.S.C. § 409A (Internal Revenue Code). Section 409A provides for a 20 percent surtax plus interest on amounts received under a nonqualified deferred compensation plan, if certain conditions exist. § 409A(a)(1)(A-B). Dr. Sutardja exercised his stock options in 2006 during a transition period between the effective date of section 409A, January 1, 2005, and the effective date of the applicable regulations, January 1, 2008. The amount in dispute is $5,282,125, plus interest.

Dr. Sutardja and his wife, Weili Dai, filed their tax refund suit in this Court on November 1, 2011 for the 2006 tax year, and on August 21, 2012, they filed a motion for partial summary judgment.   On October 10, 2012, Defendant cross-moved for partial summary judgment, and the parties thereafter filed their respective reply briefs.   The parties also submitted joint stipulations that could serve as the factual basis for summary judgment motions.   The Court has certain evidentiary documents before it, which the parties furnished as exhibits to the stipulations and the summary judgment briefs.   The Court heard oral argument in Washington, D.C. on January 28, 2013.

Plaintiffs contend that they are entitled to a refund of all taxes paid under section 409A for four reasons: (1) the grant of an employee stock option is not a taxable event; (2) the Treasury regulations exclude stock options from treatment as deferred compensation; (3) Plaintiffs did not have a "legally binding right" to the shares until the exercise of the options; and (4) any deferral of compensation attributable to the options was exempted from section 409A taxation under the short-term deferral exception set forth in IRS Notice 2005-1, 2005-1 C.B. 274 ("Notice 2005-1").   Defendant argues that Plaintiffs' stock option was granted at a discount and therefore falls squarely within the purview of section 409A.   In support of this contention, Defendant asserts that (1) section 409A permits taxation of discounted stock options and does not run afoul of Supreme Court precedent; (2) the Treasury regulations relied upon by Plaintiffs are inapplicable to section 409A; (3) Plaintiffs had a legally binding right to the option upon vesting; and (4) the option did not qualify for a short-term deferral exemption under Notice 2005-1.

The Court concludes that a genuine issue of material fact exists, namely, whether the stock option was discounted at the time it was granted.   The Court finds, and the parties agree, that this is a necessary factual predicate to tax liability under section 409A, and therefore complete resolution of this case through summary judgment is not possible. However, the four legal arguments presented by the parties either do not depend on whether the option was discounted or the parties have conceded, for purposes of this motion, that it was indeed discounted.   Therefore, these legal arguments are appropriate for partial summary judgment, and adjudication of these issues does much to narrow the case for trial.   Accordingly, for the reasons explained below, Plaintiffs' motion for partial summary judgment is DENIED, and Defendant's cross-motion for partial summary judgment is GRANTED.

## Factual Background[1]

Dr. Sutardja and Ms. Dai are employed by Marvell Semiconductor, Inc. ("MSI"), as an officer and an employee, respectively.   Plaintiffs are two of the three co-founders of

---

[1] The facts set forth in this opinion do not constitute findings of fact by the Court.  The recited facts are taken from the Complaint, the Joint Stipulation of Facts, and other documents of record in this case.

Marvell Technology Group, Ltd. ("MTGL"), the parent corporation of MSI (MTGL and MSI are referred to collectively herein as "Marvell").   Dr. Sutardja has been the President, Chief Executive Officer, and Chairman of Marvell's Board of Directors.   The Executive Compensation Committee of Marvell's Board of Directors determined stock option awards to senior executive officers, which included Dr. Sutardja.   This committee was composed solely of independent directors, and neither of the Plaintiffs was a member.

At a Board of Directors meeting on December 10, 2003, the Executive Compensation Committee fixed a maximum number of two million shares of Marvell stock that could be granted as an option to Dr. Sutardja.   Sixteen days later, on December 26, 2003, the Executive Compensation Committee approved a grant to Dr. Sutardja of Marvell stock options covering 1.5 million shares of common stock at $36.50 per share, which was subsequently ratified on January 16, 2004.   Under the terms of the option agreement, the option was to vest in segments at predetermined dates, provided Dr. Sutardja continued to be employed by Marvell.   In the event of termination of his employment at Marvell, Dr. Sutardja would be entitled to exercise previously vested but unexercised portions of the option only for the 30-day period following the termination of Dr. Sutardja's employment.   The option did not have a readily ascertainable fair market value when granted, and the option agreement was governed by California law.

In January 2006, Dr. Sutardja exercised three fully-vested portions of the option, purchasing an aggregate of 399,606 shares at the split adjusted price of $18.25 per share. Beginning in May 2006, the Board of Directors conducted an internal review of Marvell's past stock option granting practices, appointing a Special Committee to report its findings.   Neither of the Plaintiffs was a member of the Special Committee.   The Special Committee found that "the appropriate 'measurement date' for the Option for financial accounting purposes was January 16, 2004," the date on which the Executive Compensation Committee ratified the grant of the option.   Compl. ¶ 53.   Thereafter, Dr. Sutardja entered into a "Reformation of Stock Option Agreement" with Marvell, Stip. ¶ 8, and paid an additional $5,355,001, representing the excess of the amended exercise price over the original exercise price.[2]   Compl. ¶ 54.   Of this amount, $1,426,594 accounted for the discrepancy in exercise price of shares purchased by option exercises in 2006, and the balance was due to shares purchased by option exercises before 2006.   Id.

At all times material to this litigation, Plaintiffs have filed joint federal income tax returns.   In December 2007, Plaintiffs filed a joint Form 1040 U.S. Individual Tax Return for the 2006 tax year, reporting $4,849,791 in federal income tax.   Stip. ¶ 9.   Plaintiffs

---

[2] During the years in question, shares of Marvell stock have been traded on the NASDAQ National Market Systems, which reflects the following closing prices (adjusted for stock splits) for material dates in this litigation: December 10, 2003 -- $9.05 per share; December 26, 2003 -- $9.12 per share; January 16, 2004 -- $10.91 per share.   Compl. ¶ 42.   On these dates, the pre-split closing prices were $36.19, $36.50, and $43.64 respectively.   Id.

also reported on this form that Marvell withheld $6,353,628 in federal income tax and Plaintiffs made $706,944 in federal estimated payments.  Stip. ¶ 10.  On November 10, 2010, Plaintiffs received a Notice of Deficiency from the IRS concerning the 2006 tax year.  Stip. Ex. A.  In that Notice, the IRS explained:

> It is determined that your exercise of a Marvell Technology Group Ltd. stock option in 2006 is from a nonqualified deferred compensation plan, as defined under Internal Revenue Code ("IRC") § 409A(d).
>
> Accordingly, for 2006 we have determined that you are liable for an additional 20% tax under IRC § 409A(a)(1)(B)(i)(II) in the amount of $3,172,832, and a second additional tax under IRC § 409A(a)(1)(B)(i)(I) in the amount of $304,456, as shown in Exhibit 1 attached.

Stip. Ex. A at 9.  Plaintiffs paid the amount set forth in the Notice, in addition to a late-filing penalty of $126,548, for a total payment of $3,606,836, and simultaneously claimed a refund for the total amount, Stip. Ex. B.  On March 31, 2011, Plaintiffs made a supplementary claim for refund, asserting an additional deduction of $3,928,407 for the 2006 tax year.  Stip. Ex. C.  In April 2011, Plaintiffs received a notice from the IRS demanding an interest payment of $704,883.49 with respect to the tax and penalty asserted by the Notice of Deficiency, which Plaintiffs duly paid.  Stip. ¶¶ 14-15.

On April 7, 2011, Plaintiffs filed an IRS Form 1040X at the IRS San Francisco Appeals Office.  Stip. Ex. D.  Plaintiffs filed their complaint in this Court more than six months after the filing of their Form 1040X claim for refund, and Plaintiffs deemed their claims denied.

## Standard of Review

Summary judgment is appropriate where the evidence demonstrates that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Rule of the Court of Federal Claims 56(a); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–49 (1986); Casitas Mun. Water Dist. v. United States, 543 F.3d 1276, 1283 (Fed. Cir. 2008).  A "genuine" dispute is one that "may reasonably be resolved in favor of either party," Anderson, 477 U.S. at 250, and a "material" fact is one that "might affect the outcome of the suit under the governing law[.]"  Id. at 248.  The moving party carries the burden of establishing its entitlement to summary judgment.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  Once that burden is met, the onus shifts to the non-movant to identify evidence demonstrating a dispute over a material fact that would allow a reasonable finder of fact to rule in its favor.  Anderson, 477 U.S. at 256.  It is not necessary that such evidence be admissible, but mere denials, conclusory

statements, or evidence that is merely colorable will not defeat summary judgment. Celotex, 477 U.S. at 324; Anderson, 477 U.S. at 249–50.

In considering a motion for summary judgment, a court does not weigh each side's evidence but, rather, must draw all inferences in the light most favorable to the non-moving party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-88 (1986).  Where, as here, the parties have filed cross-motions for summary judgment, the Court evaluates each motion on its own merits and makes all reasonable inferences against the party whose motion is under consideration.  Marriott Int'l Resorts, L.P. v. United States, 586 F.3d 962, 968–69 (Fed. Cir. 2009) (internal citation omitted).  To the extent a genuine issue of material fact exists, both motions must be denied.  Id. at 969.

Discussion

The parties agree that at the date of grant, the option did not have a readily ascertainable market value.  Stip. ¶ 7.[3]  The parties also agree that if the option price was set at or above fair market value at the time of the grant, section 409A taxation would be inappropriate, as the Government concedes that section 409A only applies to discounted options.  At oral argument, the parties conceded that the fact issue of whether the option price was discounted is not currently before the Court.  Where the parties disagree, however, is whether the discount (or lack thereof) is relevant to the resolution of this case.

In its opening brief, Defendant proffered that "Plaintiffs' liability under section 409A rests on the premise that Dr. Sutardja's option had been granted 'in the money,' i.e., at a discount relative to the then-current fair market value of the stock."  Def.'s Mot. 1.  Thus, Defendant cannot prevail in this case without showing the existence of a discounted option.

Plaintiffs disagree with this premise, arguing that even if the option had been granted at a discount, section 409A would not apply, as there was no actual compensation creating a taxable event until Dr. Sutardja exercised the vested portions and sold the shares.  Preliminarily, Plaintiffs contend that to the extent section 409A, Notice 2005-1, and the relevant Treasury regulations authorize taxation on an option grant prior to exercise, they are contrary to binding Supreme Court precedent.  Accordingly, Plaintiffs argue that regardless of whether Dr. Sutardja's option was granted at a discount, there was no deferred compensation, and they are entitled to summary judgment.

---

[3] The option did not have a readily ascertainable fair market value at the time of grant because it was subject to a substantial risk of forfeiture and was therefore non-transferable.  This does not change the fact that the underlying stock had a fair market value based on closing trading prices.  See supra, note 2.

I.      Whether Section 409A Applies To Discounted Options

Under the Internal Revenue Code, taxpayers are required to include in their gross income "all income from whatever source derived[.]" 26 U.S.C. § 61(a).  The term "gross income" is "broad enough to include in taxable income any economic or financial benefit conferred on the employee as compensation, whatever form or mode by which it is effected." Comm'r v. LoBue, 351 U.S. 243, 247 (1956) (quoting Comm'r v. Smith, 324 U.S. 177, 181 (1945)).  Although the transfer of assets, such as shares of stock, constitutes compensation under section 61(a), the Supreme Court established half a century ago that, absent certain circumstances, the mere grant of employee stock options is not a taxable event.  See id. at 249; Smith, 324 U.S. at 179-182.  A taxable event occurs only when the option is exercised, resulting in a sale of shares to the employee, the net value of which is immediately taxable.  LoBue, 351 U.S. at 249.

This principle was established in the seminal case of Commissioner v. Smith, in which an employer granted to its employee, as compensation for his services, an option to purchase from the employer certain shares of stock of another corporation at a price not less than the market value of the stock as of the grant date.  324 U.S. at 177-78.  When the employee exercised the option two years later, the market price far exceeded the option price, and the Court held that only upon the exercise of the option was compensation realized for taxation purposes, and not at the time of grant.  Id. at 179-182.  The Supreme Court limited its holding, however, to the situation where the option price was at least equal to the market value at the time of grant, noting: "[w]hen the option price is less than the market price of the property for the purchase of which the option is given, it may have present value and may be found to be itself compensation for services rendered."  Id. at 181.  Thus, the Court recognized that a situation could arise where a stock option may be required to be included in gross income, other than at the time of exercise.

In keeping with this premise, nonstatutory[4] stock options, like the stock option granted to Dr. Sutardja, typically are required to be included in gross income, and therefore taxable, only at the date of exercise, and not at their grant or vesting date.  See Smith, 324 U.S. at 181; LoBue, 351 U.S. at 248.  In response to concerns, however, that "many nonqualified deferred compensation arrangements have developed which allow improper deferral of income," H.R. Rep. No. 108-548, at 343 (2004), in 2004, Congress enacted section 409A.  Section 409A provides:

> If at any time during a taxable year a nonqualified deferred
> compensation plan –

---

[4] Statutory stock options are compensatory options, such as incentive stock options, and are treated differently under the Code.  See §§ 422-23.  Stock options that do not meet the requirements of statutory stock options are nonstatutory stock options.  See 2005-1 C.B. at 278.

> > (I)   fails to meet the requirements of paragraphs (2), (3), and (4), or
> >
> > (II)  is not operated in accordance with such requirements,
> >
> > all compensation deferred under the plan for the taxable year and all preceding taxable years shall be includible in gross income for the taxable year to the extent not subject to a substantial risk of forfeiture and not previously included in gross income.

§ 409A(a)(1)(A)(i).   If deferred compensation income falls within the parameters of the above-quoted language, it is then subject to an additional tax of 20 percent, plus interest. § 409A(a)(1)(B)(i)-(ii).

The IRS did not define "deferral of compensation" in section 409A.  Further, the Treasury Department did not promulgate final regulations under section 409A until April 2007, T.D. 9321, 72 Fed. Reg. 19234, 19234 (2007), and those regulations apply only to tax years beginning on or after January 1, 2008, Treas. Reg. § 1.409A-6(b).  Within a few months of the statute's enactment, however, the IRS issued Notice 2005-1, which offered transitional guidance regarding the types of arrangements that are covered by section 409A, and a definition of "deferral of compensation."  Notice 2005-1 C.B. at 274-75.  Notice 2005-1 advises that if a stock option is granted with a per share exercise price that is less than the fair market value per share of the underlying stock on the date of grant, then the option will be treated as a deferral of compensation and fall under the parameters of section 409A.  See id. at 275, 278.  Thus, if the option allows the grantee to purchase stock at a discounted price, it provides for a deferral of compensation.

Plaintiffs point out that Notice 2005-1 does not constitute legal authority, and therefore is not entitled to Chevron deference.  The Government concedes that the Notice provides "only preliminary interpretative guidance and was not subject to formal notice-and-comment rulemaking," but nonetheless argues that Notice 2005-1 is entitled to Skidmore deference.  Def.'s Mot. 28.  Chevron deference is appropriate when Congress has "explicitly left a gap for [an] agency to fill," thereby constituting "an express delegation of authority to the agency to elucidate a specific provision of the statute by regulation."  Chevron v. United States, 467 U.S. 837, 843-844 (1984); United States v. Mead Corp., 533 U.S. 218, 230 (2001) (observing that "the overwhelming number of [] cases applying Chevron deference have reviewed the fruits of notice-and-comment rulemaking or formal adjudication.") (citing cases).  In such circumstances, courts are obligated to accept the agency's exercise of this conferred authority, provided it is reasonable.  See Mead, 533 U.S. at 229.  Skidmore deference, in contrast, is a lower level of deference, and may be applied to an agency interpretation "whatever its form, given the 'specialized experience and broader investigations and information' available to the agency[.]"  Id. at 234 (quoting Skidmore v. Swift & Co., 323 U.S. 134, 139 (1944)).  The

Supreme Court has repeatedly held that "the well-reasoned views of the agencies implementing a statute 'constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.'" Id. at 227 (quoting, *inter alia*, Skidmore, 323 U.S. at 139-40). In determining the level of deference to give agency interpretations, courts often look to "the degree of the agency's care, its consistency, formality, and relative expertness." Id. (footnotes omitted).

This case confronted the taxpayers here with the interpretation of a relatively complex new tax provision at a time when it was devoid of regulations. Notice 2005-1 was "the first part of . . . a series of guidance with respect to the application of § 409A." 2005-1 C.B. at 274; see also, e.g., Notice 2006-79, 2006-2 C.B. 763; Notice 2007-86, 2007-46 I.R.B. 990; Notice 2010-80, 2010-51 I.R.B. 853. However, throughout the notices, the proposed regulations, and the final Treasury regulations, the IRS was consistent in its definition of "deferred compensation" and its stance that section 409A applies to discounted options. See Prop. Treas. Reg. § 1.409A-1(b)(5), 70 Fed. Reg. 57930, 57959-60; Treas. Reg. § 1.409A-1(b)(5)(i)(A). Here, the Court finds Notice 2005-1, and the definitions therein, instructive and persuasive.

Additionally, Plaintiffs' argument that the definition of deferred compensation within Notice 2005-1 is contrary to Supreme Court jurisprudence is without merit. The application guidance set forth in Notice 2005-1 is wholly consistent with the Supreme Court's holding in Smith. In Smith, the Court analyzed an option to purchase stock "at a price not less than the then value of the stock," *i.e.*, a non-discounted option, and found that there was no compensation until exercise. 324 U.S. at 177, 181-82. Notice 2005-1, and inherently, section 409A, preserves that same treatment for non-discounted options by excluding them from the definition of deferred compensation: "an option to purchase stock of the service recipient . . . does not provide for a deferral of compensation if . . . the amount required to purchase stock under the option (the exercise price) may never be less than the fair market value of the underlying stock on the date the option is granted[.]" 2005-1 C.B. at 278. Plaintiffs' contention, therefore, that Notice 2005-1 is contrary to Supreme Court jurisprudence necessarily fails, and the issue before the Court still centers on whether the option was granted at a discount, a determination of fact that must await trial. The Court finds that section 409A applies to discounted stock options that fail to meet the requirements of section 409A(a)(2-4). Accordingly, Plaintiffs' motion for partial summary judgment with respect to this argument is denied, and that of the Government's is granted.

II.     "Deferral of Compensation" Under Treas. Reg. § 31.3121(v)(2)

Plaintiffs argue that in determining what constitutes a "deferral of compensation," the Court should look to the definition contained in Treasury regulation § 31.3121(v)(2)-1(b)(3-4), issued in 1999 under the Federal Insurance Contributions Act, I.R.C. § 3101 et

seq. ("FICA").[5]  As Plaintiffs illustrated in their briefs, the definition of "deferral of compensation" found in section 31.3121(v)(2) is substantially similar to that provided in Notice 2005-1.  The regulation, however, specifically excludes the grant of a stock option from its definition "for purposes of section 3121(v)(2)," whereas Notice 2005-1 specifically includes discounted stock options in its definition of deferred compensation, 2005-1 C.B. at 278.  Plaintiffs point to the doctrine of *in pari materia* and argue that the FICA regulation's definition, including the carve-out of stock options, applied to section 409A during the transition period, and cite Rowan Companies v. United States, 452 U.S. 247 (1981) for its holding that a substantially similar definition set forth in a FICA regulation must be interpreted consistently with the same definition in the income-tax withholding provisions of the Code.

Plaintiffs are correct in pointing out that the FICA regulation is a final Treasury regulation entitled to deference.  Deference to FICA regulations, however, does not aid Plaintiffs in establishing that this regulation applies outside of the self-limiting context of section 3121.   Unlike in Rowan, where there was nothing within either of the two conflicting regulatory definitions that limited the scope of its application, 452 U.S. at 251-52, here, section 31.3121 explicitly states that the exclusion of stock option grants from its definition of deferred compensation applies "for purposes of section 3121(v)(2)." The singular application of this carve-out was reinforced by the preamble to the final Treasury regulations under section 3121(v)(2), which states "[n]o inference is intended as to whether or not [stock] options . . . are deferred compensation for any tax purposes other than section 3121(v)(2)."  T.D. 8841, 1999-1 C.B. 598, 603 (1999).  Thus, although Plaintiffs make much out of Notice 2005-1's "sudden[] reticen[ce]" to cite to the FICA regulation when defining deferral of compensation, Pls.' Reply 16, it is logical that the IRS would not incorporate a definition from another section of the Code that explicitly states its inapplicability elsewhere.  In the preamble to the proposed Treasury regulations for section 409A, dated October 4, 2005, the IRS directly addressed the relationship between sections 409A and 3121(v)(2), explaining:

> In certain instances, these regulations cross reference the regulations under section 3121(v)(2), which provide a special timing rule under [FICA] for nonqualified deferred compensation, as defined in section 3121(v)(2) and the regulations thereunder. However, unless explicitly cross-referenced in these regulations, the regulations under section 3121(v)(2) do not apply for purposes of section 409A and under

---

[5]  The Government submits that Plaintiffs are barred from advancing this argument because it "substantially varies" from the legal theories and factual bases set forth in Plaintiffs' tax refund claim presented to the IRS.  Given the Court's determination that § 31.3121(v)(2) does not have any effect on the case, the Court need not address the "substantial variance" argument.

no circumstances do these proposed regulations affect the application of section 3121(v)(2).

Prop. Treas. Regs., 70 Fed. Reg. at 57930.

The FICA regulation is consistent with the general proposition in <u>Smith</u> and <u>LoBue</u> that an employee does not realize gain from the grant of a stock option until exercise.  Congress preserved such treatment when it enacted section 409A, provided that the option was not discounted at grant.  The Court declines to endorse an application of section 31.3121 that is not only contrary to its own explicit terms, but would also invalidate the regulations promulgated under section 409A.  <u>See</u> <u>DeLaRosa v. Peake</u>, 515 F.3d 1319, 1322 (Fed. Cir. 2008) ("It is a long-held tenet of statutory interpretation that one section of law should not be interpreted so as to render another section meaningless.") (citation omitted); <u>Ala. Tissue Ctr. v. Sullivan</u>, 975 F.2d 373, 379 (7th Cir. 1992) (rules of statutory interpretation and construction apply to administrative rules).  The Court finds that section 31.3121 does not apply for purposes of defining deferred compensation under section 409A.  Accordingly, Plaintiffs' motion with respect to the FICA regulation is denied, and the Government's motion is granted.

## III.  Legally Binding Right

For the purposes of their summary judgment motion, Plaintiffs argue that even if the option grant to Dr. Sutardja was discounted, section 409A still would not apply because Plaintiffs did not have a "legally binding right" to compensation until exercise, and thus no compensation was deferred to a later year.  Plaintiffs contend that under California law, they had no legally binding right to the stock until exercise of the option.  The Government counters that the option itself was the compensation, and Plaintiffs had a legally binding right to the compensation upon vesting.  Therefore, if granted at a discount, the option constituted deferred compensation from the date of vesting.

The parties stipulated that Dr. Sutardja's option agreement was governed by California law.  Stip. ¶ 6.  Although this case is one of federal taxation, courts look "initially to state law to determine what rights the taxpayer has in the property the Government seeks to reach."  <u>Drye v. United States</u>, 528 U.S. 49, 51 (1999).  Then, "[t]he federal revenue acts designate what interests or rights, so created, shall be taxed." <u>Morgan v. Comm'r</u>, 309 U.S. 78, 80 (1940).

Under California law, an option is "a unilateral contract which [b]inds the optionor to perform an underlying agreement upon the optionee's performance of a condition precedent."  <u>Palo Alto Town & Country Vill., Inc. v. BBTC Co.</u>, 521 P.2d 1097, 1101-02 (Cal. 1974) ("A contract conferring an option to purchase is . . . an irrevocable and continuing offer to sell, and . . . vests in [the optionee] only a right in personam to buy at his election.") (citations omitted).  "A condition precedent is one which is to be

performed before some right dependent thereon accrues, or some act dependent thereon is performed." Cal. Civ. Code § 1436 (West).

Here, Plaintiffs could not exercise any portion of the option until such portions had vested. Def.'s Ex. 5 at 2 nn.3-6. The option agreement mentions a "Vesting Schedule,"[6] and explains that:

> Termination of Relationship.   In the event an Optionee's Continuous Status as an Employee or Consultant terminates, Optionee may, to the extent this Option was vested at the date of such termination (the "Termination Date"), exercise this Option at any time during the 30 day period immediately following the Termination Date. To the extent that Optionee was not vested in this Option at the date of such termination, or if Optionee does not exercise this Option within the time specified herein, this Option shall terminate. Notwithstanding the foregoing, in no event shall any Option be exercisable later than the Term/Expiration Date as provided in the Notice of Grant.

Option Agreement ¶ 5; see also Option Agreement ¶¶ 6-7; Stip. ¶ 5.  Parsing this language, the condition precedent under the option agreement is that Dr. Sutardja had to be employed by Marvell at the scheduled vesting dates to obtain the right to exercise the option.  Once the option vested, Marvell was contractually bound to sell and Dr. Sutardja had the irrevocable right to purchase shares at the option price.  The Court finds that Dr. Sutardja satisfied the condition precedent – employment – at the time of vesting, and therefore had a legally binding right to purchase shares as of the date of vesting.  The mere fact that the agreement provided for a 30-day grace period in which to exercise vested portions in the event of a separation from service does not vitiate Dr. Sutardja's right to exercise those portions, provided he does so in a timely manner.

Plaintiffs cite California case law in support of their argument that a "mere right of election" is insufficient to establish a legally binding right to compensation.  Pls.' Mot. 21.  Similar to the vesting and exercise requirements present here, in Barton v. Elexsys International, Inc., an employee received a series of stock options which vested at later intervals, and by the terms of the plan, the employee had only 30 days to exercise any vested portion in the event of termination. 62 Cal. App. 4th 1182, 1184-85 (1998).  The court explained that at the date of termination, the employee's "[vested] stock options gave him the right to purchase some shares for $3.50 per share and others for $1.25 per share."  Id. at 1186 (emphasis added).  The employee did not attempt to exercise these

---

[6] The parties did not submit this referenced "Vesting Schedule," but stipulated that "[t]he Option was to vest (become exercisable) in segments at predetermined dates as Dr. Sutardja continued to perform services for MSI." Stip. ¶ 5.

stock options until five months later, at which time he was informed that, pursuant to the terms of the option, the right to exercise no longer existed. Id. The California appeals court affirmed the trial court's finding of summary judgment for the defendant, as the employee failed to exercise his right to purchase shares within the relevant time period. Id. at 1195. In so holding, however, the court in Barton in no way undermined the fact that the employee had a legally binding right to exercise the vested portions of his option within the appropriate time frame. In contrast, California law reinforces the view that options create legally binding rights, as once a condition precedent has been satisfied, a failure to deliver stocks upon demand "constitute[s] a breach of [a] contractual obligation." Robinson v. Raquet, 36 P.2d 821, 825 (Cal. Ct. App. 1934). Thus, California law establishes that vested options give the optionee the legally binding right to purchase shares at a designated price. The next inquiry, however, is whether this right to purchase shares constitutes a legally binding right to compensation.

Plaintiffs contend that the right to purchase shares is not a right to compensation, whereas the Government argues that the irrevocable right to purchase shares at a discount necessarily creates a right to compensation. In contesting this point, the parties again turn to the seminal case of Commissioner v. Smith, and its compliment case, Commissioner v. LoBue. In these two cases, the Supreme Court held that the grant of employee stock options was indeed compensation, but taxable gain was not measurable until the options were exercised, thereby creating a taxable event. 324 U.S. at 182; 351 U.S. at 249. In Smith, the Supreme Court affirmed the Tax Court's finding that "the *option was given to respondent as compensation* for services, and implicitly that the compensation referred to was the excess in value of the shares of stock over the option price whenever the option was exercised." 324 U.S. at 182 (emphasis added). Similarly, in LoBue, the Supreme Court explained that unless an option has a readily ascertainable market value at grant, "uniform Treasury practice . . . [is] to measure the compensation to employees given stock options subject to contingencies of [ongoing employment] by the difference between the option price and the market value of the shares at the time the option is exercised." 351 U.S. at 249. Both of these cases, therefore, explicitly recognize that the option itself is compensation, regardless of when that compensation is measurable and realized for tax purposes. Accord Racine v. Comm'r, T.C. Memo. 2006-162, 3 (2006) ("In general, when an employee receives a nonstatutory stock option that does not have a readily ascertainable fair market value, the employee is not taxed on the receipt of the option at that time, *although it is part of his or her compensation*.") (emphasis added) (footnote omitted).

Here, as the parties stipulated, the option did not have a readily ascertainable market value when granted to Dr. Sutardja. Stip. ¶ 7. The grant itself, however, constituted compensation, and once it vested, Dr. Sutardja had a legally binding right to purchase shares at a designated price. Accordingly, on the issue of whether Plaintiffs had a legally binding right to compensation under California law, the Court denies Plaintiffs' motion and grants the Government's motion.

IV.    Short-term Deferral Exception

Finally, Plaintiffs argue that even if the option was granted at a discount and subject to section 409A, any deferral of income would be exempted as a short-term deferral under Notice 2005-1.  The exception applies if "at all times the terms of the plan require payment by, and an amount is actually or constructively received by the service provider by, . . . [a] date that is 2½ months from the end of the service provider's first taxable year in which the amount is no longer subject to a substantial risk of forfeiture[.]" 2005-1 C.B. at 277-78.[7]   Notice 2005-1 defines substantial risk of forfeiture in the relevant context:  "[f]or purposes of § 409A, an amount will not be considered subject to a substantial risk of forfeiture beyond the date or time at which the recipient otherwise could have elected to receive the amount of compensation, unless the amount subject to a substantial risk of forfeiture (ignoring earnings) is materially greater than the amount the recipient otherwise could have elected to receive." Id. at 280.[8]   As demonstrated above, Dr. Sutardja could have elected to receive his compensation through a purchase of shares once the option (or portions thereof) vested.  Therefore, under Notice 2005-1, the vested portions of Dr. Sutardja's option were not subject to a substantial risk of forfeiture.

In January 2006, Dr. Sutardja exercised three portions of the option, portions which had fully vested prior to 2006.  Stip. ¶ 8.  Although Dr. Sutardja did not defer his compensation for a period greater than two and one-half months after the year in which the option portions vested,[9] there are no terms within the stock agreements themselves that required him to actually or constructively receive his compensation within this period.  To the contrary, Marvell's Amended Stock Option Plan allows for an option term of up to ten years.  See Marvell's Amended Stock Option Plan ¶ 6.  Thus, Dr. Sutardja's option agreement, as issued under Marvell's Amended Stock Option Plan, fails on its face to satisfy the requirements of a short-term deferral.

Plaintiffs disagree with this characterization of the option term, arguing that it is instead "a rolling 30-day option kept alive solely by Dr. Sutardja's daily job performance." Pls.' Reply 4.  Under Plaintiffs' theory, therefore, even after vesting, the

[7] Again, the guidance set forth in Notice 2005-1 was implemented in a consistent fashion through the subsequent Treasury regulation: "A payment is a deferred payment if it is made pursuant to a provision of a plan that provides for the payment to be made or completed on or after any date . . . that will or may occur later than the end of the applicable 2½ month period . . . ." Treas. Reg. § 1.409A-1(b)(4)(D).

[8] Although Plaintiffs' highlight this "materially greater" exception in their complaint, see Compl. ¶ 77, there was no discussion of the exception in any of the briefing.  Regardless, the exception is irrelevant here, as the option agreement did not offer Dr. Sutardja a materially greater amount of shares in a future year rather than a materially lesser amount of shares in an earlier year.  See 2005-1 C.B. at 280.

[9] The parties stipulated that these exercised portions were "fully-vested (prior to 2006)."  Stip. ¶ 8.  The Court assumes, solely for purposes of this argument, that these portions vested in 2005.

option was still subject to a substantial risk of forfeiture until exercise, and the 30-day limitation mandated that any deferral of compensation be short-term.  To accept this argument, however, Plaintiffs ostensibly ask the Court to disregard the unequivocal and unambiguous language of Notice 2005-1 stating that there is no substantial risk of forfeiture beyond the date when Dr. Sutardja "otherwise could have elected to receive the amount of compensation." 2005-1 C.B. at 280.  The Court declines to do so, and finds that upon vesting, those portions of the option were not subject to a substantial risk of forfeiture.  The Court views the 30-day limitation period as a grace period in which Dr. Sutardja could exercise the vested portions of his option following any termination of employment.

Accordingly, if the option is found to have been discounted and falls within the purview of section 409A, Plaintiffs cannot avail themselves of the short-term deferral exception.  On this issue, therefore, the Government's motion for partial summary judgment is granted, and the Plaintiffs' motion is denied.

## Conclusion

Upon full consideration of the cross-motions before the Court, Plaintiffs' motion for partial summary judgment is DENIED, and the Government's motion for partial summary judgment is GRANTED.  Additionally, the Court GRANTS Plaintiffs' motion to strike the Government's exhibits 4, 6, 7, and 8 on grounds of relevance, lack of authentication, and hearsay, and admits Plaintiffs' exhibits of Marvell's Amended Stock Option Plan and Dr. Sutardja's Option Agreement.[10]  As explained, the outcome of this case turns on the factual issue of whether Marvell granted Dr. Sutardja's stock option at a discounted price below fair market value.  The Court will arrange for a scheduling conference with counsel to set this matter for trial.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge

---

[10] The admission of these two exhibits moots Plaintiffs' conditional objections to the Government's exhibits 9, 10, and 11.  See Pls.' Objs. 2-3.